# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF COLUMBIA

THE KEYSTONE GROUP, LLC,     )
3 Bethesda Metro Center     )
Suite 605     )
Bethesda, MD 20814     )
     )
     )
     )
     )
     Plaintiff,     )
     )
     v.     )     Case No.1:07-cv-01051
     )
     )
TISHMAN CONSTRUCTION CORPORATION     )
OF D.C.     )
1150 18th Street, NW     )
Suite 475     )
Washington, D.C. 20036     )
     )
     Serve:  Corporation Service Company     )
     1090 Vermont Ave., N.W.     )
     Washington, DC 20005     )
     )
     Defendant.     )
_____     )

## **COMPLAINT**

Plaintiff, The Keystone Group, LLC ("Keystone"), by and through its

undersigned counsel, pleads and alleges as follows:

1.     This is an action for breach of (bilateral) contract, breach of (unilateral)

contract, promissory estoppel, fraud, breach of fiduciary duty, quantum

meruit/unjust enrichment, and for declaration of a constructive trust.

Through a combination of broken promises and/or deception, Defendant

has enriched itself at the expense of Plaintiff by wrongfully usurping for itself <u>alone</u> a valuable contractual opportunity that rightly belonged <u>jointly</u> to Plaintiff and Defendant.

## PARTIES AND JURISDICTION

2.    Keystone is now, and at all relevant times has been, a limited liability company organized and existing under the laws of Maryland, with its principal place of business in Bethesda, Maryland.

3.    Defendant, Tishman Construction Corporation of D.C. ("Tishman"), is now, and at all relevant times has been, a corporation organized and existing under the laws of the District of Columbia, with its principal place of business in the District of Columbia.

4.    This court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §1332; there is complete diversity of the parties and the amount in controversy exceeds $75,000.

5.    Venue is proper pursuant to 28 U.S.C. §1391(a)(1) and (2).

## FACTS

6.    The American Pharmacists Association ("APhA"), which occupies 2215 Constitution Avenue NW (also known as the Pope Building), contemplated a major expansion/renovation project to its headquarters facility which would renovate the existing Pope Building, demolish the building behind the Pope Building, and construct a new building of approximately 300,0000 square feet (including garage).

7.     Keystone has had a long standing and successful relationship with APhA, in general, and Ann Dubas (formerly known as Ann Somerset), its Vice President, in particular.  Otis E. Smith (hereinafter "Eddie Smith"), a Manager of Keystone, has worked successfully with Ms. Dubas for over fourteen years, including at her prior position with another employer. Keystone also had done significant work on the interior of the Pope Building for the APhA over the years.  Because of this positive relationship with APhA and Ms. Dubas, Keystone was aware of the opportunity associated with APhA's upcoming expansion/renovation project and attempted to become APhA's development/construction manager for the project.

8.     APhA chose The JBG Companies ("JBG"), another local D.C. area company, to be the development/construction manager for the upcoming construction project.

9.     Due to Keystone's prior relationship with APhA and Ann Dubas, APhA indicated it was interested in having Keystone participate in the upcoming project in some capacity, possibly even as the general contractor.  This created a very valuable business opportunity for Keystone.  Keystone understood, however, that because of its limited financial and human resources, it would need to affiliate with a larger general contracting firm in order to successfully compete for a major role in such a large project.

10.    Eddie Smith's brother, Robert Smith, was a senior project manager with Tishman.

11.    Tishman is a subsidiary or affiliate of Tishman Corporation, a large, nationally recognized, construction firm headquartered in New York. Tishman had been trying for some time, through Tishman of D.C., to increase its presence in the D.C. market, but had had limited success because of the preexisting relationships that most of the major developers/owners in D.C. already had with local D.C. area contracting firms.

12.    Eddie Smith recommended to Keystone that they explore the possibility of a joint venture with Tishman to pursue the opportunity at APhA.

13.    Sometime in the early fall of 2001, Eddie Smith and his brother Robert Smith arranged a meeting between Keystone and Tishman to discuss jointly pursuing the upcoming APhA construction project. Tishman, through the head of its D.C. office, Jim Scarpace, expressed great interest in the APhA project and expressed the belief that it presented a major opportunity for Tishman to more firmly establish itself in the D.C. market. Unlike Keystone, Tishman had no preexisting relationship with APhA or its senior officials. The parties agreed to pursue the opportunity together as a joint venture.

14.    After the initial discussions with Tishman, and the parties' agreement to pursue the project together as a joint venture, Keystone arranged a meeting sometime in the fall of 2002, between Tishman, Keystone, and the APhA The purpose of this meeting was to introduce the APhA to Tishman (and vice versa) and to present the concept of a Tishman-Keystone joint

venture for APhA's consideration.  APhA was highly receptive to the concept of a Tishman-Keystone joint venture.

15.     Approximately six months after the above-referenced fall meeting between Tishman, Keystone, and APhA, Keystone arranged another meeting with APhA and its development manager, JBG, to discuss a proposal for the Tishman-Keystone joint venture to provide pre-construction services in connection with the upcoming project.

16.     On February 6, 2004, Tishman, in association with Keystone, submitted a proposal for pre-construction services to JBG.  A copy of that proposal is attached hereto as Exhibit A.

17.     The pre-construction services proposal was viewed by Tishman and Keystone as an important opportunity to demonstrate their expertise and capabilities to APhA and obtain a competitive advantage in pursing the general contract for the project.  Both Tishman and Keystone employees were substantively involved in the preparation of the pre-construction services proposal.

18.     On or about June 2004, JBG, on behalf of APhA, accepted the Tishman-Keystone proposal for pre-construction services.

19.     Both Tishman and Keystone employees did substantive work in connection with delivering the pre-construction services, including the development of a "Schematic Estimate Package," dated April 29, 2004, attached hereto as Exhibit B.  In particular, Keystone employees met with architects for the project to refine schematics and assisted in the

development of cost projections. The parties agreed, however, that Keystone would not share in the fee for these pre-construction services since Keystone would be compensated if and when their team was successful in becoming the general contractor for the project.

20.    On or about November 10, 2004, APhA (through JBG) formally invited three firms to submit proposals to provide general contractor services for the upcoming headquarters project.  Tishman was included as one of the three firms as a direct result of the prior relationship and efforts of Keystone and the Tishman-Keystone joint venture.

21.    But for the efforts and involvement of Keystone, Tishman would not have had the opportunity to compete for the APhA project.

22.    On or about November 19, 2004, Jim Scarpace, Jeffrey Dodd, and Robert Smith of Tishman, and Michael Kay, Eddie Smith, and Jeffrey Bolotin, of Keystone, met in the offices of Tishman in D.C. to discuss the APhA project, in general, and the details of the economic arrangement between Tishman and Keystone, and the form and structure of the presentation to APhA, in particular.  During this meeting, several structures for presentation and compensation sharing were discussed.  In the end, it was agreed by all parties that, regardless of the substantive economic arrangement between them, it would improve and simplify the proposal to APhA if the team were presented to APhA with Tishman as the sole named general contractor and Keystone as a key member of a "Tishman team." As to the parties economic split, Keystone proposed that the parties

share the general contractor's fee/profit equally, 50% to Keystone and 50% to Tishman. Tishman agreed to the concept of splitting the fee/profits from the project but countered that a 50/50 split was weighted too heavily in Keystone's favor in as much as Tishman would be the party furnishing any bond and would be the party liable under the construction contract with APhA. The parties agreed that Jim Scarpace would get back to Jeffrey Bolotin with a counterproposal as to the parties' respective percentage interests in the fee/profits from the project.

23.    Both parties understood the importance of clarifying their agreement and finalizing their negotiations regarding their economic deal prior to the submission of the proposal to APhA, in order to ensure both parties were agreeable to the terms of their respective participation. Since the parties had already agreed that they would pursue the project together, neither party was free to pursue the project independently of the other. Accordingly, the parties understood that they needed to reach agreement on all of the essential terms of their deal with each other before submitting the proposal to APhA. During this meeting, Keystone raised the issue of whether the parties would need to memorialize their agreement in a written contract or whether an oral agreement would be sufficient. Jeffrey Dodd of Tishman expressed his belief that, since there was no assurance that the team would be selected by APhA, it would be an unnecessary expenditure of legal fees to do a formal written contract at that time. Dodd specifically assured Keystone that doing so was unnecessary since

their deal could be memorialized easily in a written document if and when the parties were awarded the project. Keystone accepted Tishman's assurances.

24.    In late November or early December of 2004, Jim Scarpace got back to Jeffrey Bolotin with Tishman's counterproposal. Mr. Scarpace proposed that Tishman would share the fee/profits earned on the project 75% to Tishman and 25% to Keystone. Bolotin responded by requesting a 70-30 split.

25.    In a follow up phone conversation during the early part of December 2004 (sometime prior to December 13), Jim Scarpace of Tishman informed Jeffrey Bolotin that a 75%-25% fee/profit split between Tishman and Keystone was Tishman's best offer. Mr. Scarpace specifically advised that Tishman's New York office would not agree to any larger percentage for Keystone. Mr. Scarpace stressed that he believed the 25% offer was fair to Keystone and should be accepted because Tishman would be posting any bond required as the prime contractor and would be assuming overall liability for the project while Keystone would not have to share in this liability. After some discussion, Jeffrey Bolotin on behalf of Keystone agreed to accept Tishman's offer, including the 25% level of participation in the general contractor fees/profit.

26.    As of the date of the above-referenced conversation, both parties clearly understood and agreed that they had reached a binding agreement on all of

the material terms of their economic participation in the APhA project.
That agreement included the following material terms:

a.  In exchange for: i) Keystone's referral of the APhA opportunity, ii)
    Keystone's strategic and substantive assistance in the development of
    the preconstruction services and the general contractor services
    proposals to APhA, iii) Keystone's making available to Tishman three
    Keystone employees to participate as key members of the Tishman
    project "team" (and permitting Tishman to represent to APhA in the
    proposal that these Keystone employees would be working directly as
    part of the Tishman team), and iv) Keystone's continuing utilization of
    its relationship with APhA in the marketing of the Tishman team's
    proposal,

b.  Tishman would, if it won the project: i) share with Keystone 25% of
    any and all of fee/profits generated by the project, and ii) not seek to
    have Keystone participate in any required bond or assume any liability
    for Tishman's work.

27.  On December 13, 2004, Tishman and Keystone presented their formal
     proposal for construction services to JBG and APhA.  As the parties had
     agreed, three Keystone employees, Eddie Smith, Carl Beyma, and Trevor
     Harmon, were included in the Project Organization Chart, "working
     directly as part of the Tishman team and reporting to the senior Tishman
     management."

28. The Narrative included in the Proposal emphasized Keystone's involvement, highlighting its prior successful experience with APhA, its knowledge of the Pope Building from previous renovations, and its separate "knowledge base and relationships" with local subcontractors. A copy of that proposal is attached hereto as Exhibit C.

29. Following the submission of their formal presentation, Keystone continued its efforts to promote the Tishman-Keystone team to APhA and invited APhA officials to accompany Eddie Smith of Keystone on a visit to New York to view some of Tishman's construction projects. APhA officials accepted this invitation and Keystone and Tishman shared the cost of this trip.

30. In April 2005, Ann Dubas of APhA advised Eddie Smith of Keystone that the Tishman team had been selected as the general contractor for the project. Ms. Dubas expressed her pleasure that Keystone would be involved in the project.

31. Eddie Smith promptly called Jeffrey Dodd to advise him of the good news.

32. At no time prior to learning of the decision of APhA to select the Tishman proposal did anyone from Tishman indicate that Tishman would repudiate its agreement with Keystone; nor did anyone from Tishman indicate that they considered the oral agreement it had reached with Keystone as non-binding, incomplete, or requiring further substantive negotiation in any way. In fact, all communications between Tishman and Keystone during

this period acknowledged, and were otherwise consistent with, the complete and binding nature of agreement reached between the parties.

33.    Sometime in early 2006, at a lunch arranged by Jeffrey Dodd of Tishman attended by Messrs. Kay, Keegan and Smith of Keystone, Dodd raised, for the first time, that Tishman wanted to compensate Keystone "outside of the APhA contract" with a promise of future tenant work on other Tishman projects.  By the time of this lunch, however, all parties understood that Keystone had already substantially performed all of its obligations with respect to the material terms of the parties' agreement. Tishman's attempt to change the deal, notwithstanding Keystone's substantially completed performance, came as a disconcerting surprise to Keystone.

34.    In a conference call following the lunch, Keystone informed Tishman, in no uncertain terms, that it would require adherence to the existing agreement between the parties.  Keystone advised that it was not interested in changing the deal, or accepting any form of alternative compensation other than as agreed by the parties.

35.    In a subsequent conversation between Mr. Dodd of Tishman and Eddie Smith of Keystone, Dodd acknowledged that Keystone had provided valuable services to Tishman and proposed that Tishman pay a "finder's fee" to Keystone for these services in the amount of $100,000, in lieu of any compensation that Keystone would have received for its 25%

participation.  Keystone rejected this offer and restated its insistence on the parties' adherence to their oral agreement.

36.     On or about March 7, 2006, Judy Herman, on behalf of Tishman, advised Jeffrey Bolotin of Keystone that it was Tishman's position that its oral agreement with Keystone required further substantive negotiation with regard to an allegedly open issue of the extent of Keystone's guaranty or assumption of liability.  Ms. Herman specifically acknowledged and confirmed during this call that the parties had agreed to split the fee/profits 75%-25%, but claimed that the agreement was non-binding because it was not in writing and that further negotiations as to the form of a Keystone guaranty was still necessary.  Keystone strongly disagreed with Tishman's position as described by Ms. Herman.

37.     In a letter dated April 4, 2006, Jeffrey Bolotin, in an attempt to settle the parties' dispute, and to move beyond the alleged open issue regarding Keystone's assumption of liability, suggested that Eddie Smith and Kevin Keegan of Keystone meet at Tishman's offices to review the pricing of the APhA bid with goal of determining whether Keystone could become comfortable with the guaranteed maximum price and therefore accept liability for its 25% participation, even though the parties had agreed previously that Keystone would have no such liability for its participation. Tishman, however, declined to have such a meeting and refused to let Keystone review the pricing of the APhA bid.

38.  As noted above, the agreement between the parties expressly did not require Keystone to assume liability or provide a guaranty.  Tishman's raising of this allegedly open issue at this late date was merely a pretense for its attempt to repudiate the agreement.

39.  On April 19, 2006 at a meeting held at Tishman's offices attended by Michael Kay and Jeffrey Bolotin for Keystone and by Ms Judy Herman, Jeffrey Dodd and Stephen Dalton of Tishman, Tishman, for the first time, raised a new argument as to why Keystone was not entitled to the previously agreed 25% of the fee/profits.  According to Tishman, Keystone's 25% participation would have to take into account a previously undisclosed payment that allegedly would have to be made "off the top" to Tishman's New York's and D.C. offices.  According to Tishman, therefore, Keystone's 25% participation would actually net out to only 10% of the fee/profits.

40.  In December, 2006, Tishman executed a general contractor's agreement with APhA for approximately $60,000,000 to $70,000,000, based on the "cost of the work plus a fee with a negotiated guaranteed maximum price."  The base fee to Tishman pursuant to this contract is estimated to be no less than $1,500,000 and up to $1,750,000.  Twenty-five percent (25%) of these fees, or between $375,000 to $437,500, rightfully belongs to Keystone.  In addition, the contract also provides for additional fee/profit in the event of a "cost savings" and an early completion bonus in the amount of $277,522.  Twenty-five percent (25%) of any such

additional fee/profit and early completion bonus also rightfully belongs to Keystone.

## COUNT ONE (BREACH OF BILATERAL CONTRACT)

41.    Plaintiff reallege all of the preceding and following allegations as if set forth herein.

42.    Tishman and Keystone entered into a clear oral agreement which requires Tishman, inter alia, to share 25% of the fee/profit earned on the APhA project with Keystone.

43.    While the agreement was not reduced to a formal written agreement, this did not affect the binding nature of the agreement.

44.    The parties reached a meeting of the minds on all of the material terms of their agreement and intended that their oral agreement would be binding.

45.    Tishman has wrongfully breached and repudiated the parties' agreement and otherwise failed and refused to honor the agreement.

## COUNT TWO (BREACH OF UNILATERAL CONTRACT)/PROMISSORY ESTOPPEL

46.    Plaintiff reallege all of the preceding and following allegations as if set forth herein.

47.    Tishman, though its authorized representatives, made express promises to Keystone that in exchange for Keystone's assistance in obtaining the APhA project award, and Keystone's willingness to make three of its senior employees available to participate in the Tishman project team, Tishman would pay to Keystone 25% of the fee/profit, ultimately earned on the APhA project.

48. In reliance on Tishman's promise, Keystone provided very valuable services and assistance to Tishman and substantially performed all of the services requested of it.

49. Tishman fully accepted and utilized Keystone's services and has received very substantial benefits from those services.

50. Keystone's substantial performance of the requested services, and Tishman's knowing acceptance of those services, establishes a binding unilateral contract under D.C. law, which entitles Keystone to specific performance of Tishman's promise.

51. In the alternative, the circumstances establish a promissory estoppel precluding Tishman from repudiating its promise.

## COUNT THREE (FRAUD)

52. Plaintiff reallege all of the preceding and following allegations as if set forth herein.

53. At the time Tishman represented that it would share with Keystone 25% of the fee/profit earned on the APhA project, and the other representations and promises referenced above, Tishman, in fact, had no intent to fulfill its promises. Instead, these representations were made in bad faith and with the intent to deceive Keystone into providing its continuing assistance in obtaining the business from APhA. Tishman did not reveal to Keystone its actual intent with regard to the promises it had made to Keystone because it knew that if it had done so, it would not obtain Keystone's continuing assistance in connection with the project.

54.    Keystone relied on the representations made by Tishman with regard to
their agreement to share fees/profit on the APhA project. But for those
representations, Keystone would not have provided its continued
assistance and cooperation, and Tishman would not have received the
award of the APhA project.

### COUNT FOUR (CONSTRUCTIVE TRUST)

55.    Plaintiff reallege all of the preceding and following allegations as if set
forth herein.

56.    Through its wrongful conduct, Defendant has usurped for itself a valuable
business opportunity that rightfully belongs to Plaintiff as well.

57.    Defendant should not be allowed to profit from its inequitable and
wrongful conduct.

58.    A constructive trust for the benefit of Plaintiff should therefore be
imposed on at least 25% of the fees/profit, including any fee/profit as a
result of cost savings, earned by Defendants in connection with the APhA
project. Unless such a constructive trust is imposed, Defendant will be
unjustly enriched.

### COUNT FIVE (QUANTUM MERUIT/UNJUST ENRICHMENT)

59.    Plaintiff reallege all of the preceding and following allegations as if set
forth herein.

60.    Keystone rendered valuable services to Tishman which permitted it to
obtain a very valuable general contractor agreement for the construction of
a major project for the APhA. These services included, but were not

limited to, referral/introduction/brokerage type services, as well as consulting services and strategic planning.

61.   Tishman clearly understood that these services were being provided by Keystone with the expectation that it would be compensated by Tishman.

62.   With full knowledge of Keystone's expectations, Tishman accepted the services provided by Keystone without reservation or objection.

63.   The parties representations and conduct establish an "implied-in-law" contract under applicable law which has been breached by Tishman.

64.   The value of the services provided by Keystone to Tishman equals or exceeds $1,000,000.

## COUNT SIX (BREACH OF FIDUCIARY DUTY)

65.   Plaintiff reallege all of the preceding and following allegations as if set forth herein.

66.   Tishman and Keystone's orally agreed to enter into a joint venture partnership in which the parties assumed fiduciary obligations to each other, including a duty of fairness and loyalty.

67.   The relationship established between Tishman and Keystone was clearly understood by both parties to be one of trust and confidence.

68.   In furtherance of the parties' joint venture partnership, Keystone provided Tishman valuable assistance and confidential information for utilization by Tishman in connection with the pursuit of their joint efforts to realize the opportunity represented by the APhA project.

69.  Among the obligations Tishman assumed as a party to the joint venture with Keystone was the obligation not to pursue the APhA opportunity without Keystone. Tishman breached its fiduciary duty to Keystone in this regard by among other things usurping for itself the APhA opportunity and negotiating a contract on behalf of the joint venture which excludes the proper participation of Keystone in the profits of the venture.

## COUNT SEVEN (PUNITIVE DAMAGES)

70.  Plaintiff reallege all of the preceding and following allegations as if set forth herein.

71.  Tishman's conduct in this case represents a bad faith attempt to usurp for itself alone a business opportunity that clearly belonged to Plaintiff as well. Defendant's conduct goes well beyond a mere breach of contract and in fact reflects an egregious and deliberate attempt to take advantage of Plaintiff through deceptive and tortious conduct in complete disregard of Plaintiff's rights.

72.  Punitive damages are necessary and appropriate under the circumstances of this case in order to deter Tishman and others from engaging in this kind of conduct in the future.

## DAMAGES

WHEREFORE, Plaintiff prays that it be awarded the following damages and relief:

1.  Compensatory damages in the amount of $1,000,000 or such greater amount as may be proven at trial;

2.    Punitive damages in the amount of $1,000,000, or such greater amount as may be demonstrated at trial is necessary to deter Defendant from engaging in similar tortious conduct in the future;

3.    Declaration that 25% of the fees/profit (including any fee/profit associated with cost savings earned by Defendant in connection with its work for APhA) be held in trust for the benefit of Plaintiff;

4.    Specific performance of Defendant's promise to pay Plaintiff 25% of the fee/profit (including any bonuses) earned on the APhA project;

5.    Such other and further relief as the court may find appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues so triable.

Respectfully submitted,

By: /s/G. David Fensterheim

G. David Fensterheim
DC Bar #358223
FENSTERHEIM & BEAN, P.C.
1250 Connecticut Ave., NW, Suite 700
Washington, D.C. 20036
(202) 419-1510
Counsel for Plaintiff



February 6, 2004

Ms. Kathleen L. Webb
The JBG Companies
4445 Willard Avenue
Chevy Chase, MD 20815

Re.:    Preconstruction Services for the Expansion of American Pharmacists
        Association Headquarters Building

Dear Ms. Webb:

Tishman Construction Corporation of DC in association with The Keystone Group are
pleased to submit the attached fee proposal for preconstruction services for the expansion of
American Pharmacists Association (APhA) Headquarters Building on Constitution Avenue
in Washington, DC. We believe our team has the requisite qualifications and vast experience
to not only meet, but to exceed your expectations.

We have based our proposal on the attached scope of services, our knowledge of the current
site conditions and proposed design, and a construction commencement date of October
2004. By working as part of the preconstruction team to provide value engineering,
constructability reviews, budgeting, staging, and logistics assistance, we are confident that
we can exceed your expectations and help complete the project within the budget, schedule
and quality expectations of APhA.

On behalf of The Keystone Group and ourselves, we want to thank you again for the
opportunity to present our qualifications and convey to you our enthusiasm and commitment
to provide our services to The JBG Companies and the American Pharmacists Association
for this project. We look forward to working with you to ensure the success of this project.

If you have any questions, I can be reached at (202) 966-3444 or by e-mail at
scarpace@ma.tishman.com.

Sincerely,

TISHMAN CONSTRUCTION CORPORATION OF DC

James M. Scarpace
Senior Vice President

Cc:    Michael Kay
       Eddie Smith
       Jeff Dodd

Tishman Construction Corporation of D.C. Chevy Chase Pavilion, 5445 Wisconsin Avenue, N.W. Suite 750, Washington, D.C. 20815
(202) 966-3444    Fax (202) 966-3460



# American Pharmacists Association

## Headquarters Building Expansion








APhA

The JBG Companies

TISHMAN

THE KEYSTONE GROUP

### TISHMAN CONSTRUCTION CORPORATION

5335 Wisconsin Avenue, NW, Suite 750
Washington, DC 20015
OFC: (202) 966-3444
FAX: (202) 966-3460



## MODERNIZATION OF AMERICAN PHARMACISTS ASSOCIATION
## HEADQUARTERS BUILDING

### Fee Proposal

## Preconstruction Phase Services Provided:

<u>Design Review/Value Engineering</u>
Review the plans and specifications developed by the architectural/engineering team and make practical recommendations for constructibility that may save time and/or money. This activity is performed throughout the development of design drawings by the project manager, and our in-house staff of architectural, structural, mechanical, electrical, and construction specialists.

<u>Building Systems Analysis</u>
Analyze building systems, materials, and equipment as to their appropriateness and cost.

<u>New and Innovative Developments Advisement</u>
Review design drawings with respect to new and innovative developments that may produce savings in time and/or money while maintaining or improving quality.

<u>Long-Lead and Early-Start Items Identification</u>
Review design for adaptability to staged construction in order to make early commitments for the purchase and fabrication of long lead and early start items.

<u>Construction Feasibility</u>
Evaluate design for construction feasibility, construction ease and speed, and use of appropriate laborsaving, off-site fabrication.

<u>Specifications Review</u>
Review design specifications for conformance with current trade practices and appropriate allocation of equipment purchases and work assignments.

<u>Alternate Systems Review</u>
Review design specifications so that alternate systems, components, materials, and techniques are fully identified to permit proper bidder response.

<u>Bidding Alternates Development</u>
Where appropriate, develop bidding alternates for materials, construction techniques, fabrication, and installation methods in order to take advantage of current conditions in the construction marketplace.

<u>Budget Preparation</u>
Prepare comprehensive trade-by-trade project budgets at various levels of design refinement, including detailed cost development of systems, assemblies, equipment, and materials.



### Local Pricing Analysis
Advise the client on jurisdictional assignments, labor agreement obligations, trade restrictions, and local work practices.

### Labor Market Analysis
Investigate, analyze, and advise the client of existing and projected labor availability in key trades. Review design to minimize allocation of work to less readily available trades.

### Local Work Practices Advisement
Advise the client on jurisdictional assignments, labor agreement obligations, trade restrictions, and local work practices.

### Project Implementation Plan
Develop and use a project implementation plan to analyze special requirements and conditions. Detail all such requirements and conditions in the bidding documents before the actual work commences in the field.

### Fast-Tracking Analysis
Identify opportunities for fast-tracking the overall project schedule and evaluate costs and benefits of such strategies.

### Special Items Identification
Identify requirements for off-hours work, overtime work programs, and shutdowns so that such requirements may be addressed in the bid documents.

### Scheduling
Develop bar chart and milestone schedules that highlight critical decisions and identify long-lead items and provide for their advance procurement.

**Fee:   $25,000 + Reimbursable Expenses**

February 5, 2004

# Tishman Construction Corporation
## in association with
## The Keystone Group

Presentation to Provide
Preconstruction Services

to



American Pharmacists Association™
APhA



# Team Introductions

➤ Jim Scarpace – Senior Vice President, Tishman

➤ Jeff Dodd – Director – Pre-Construction, Tishman

➤ Michael Kay – Owner, Keystone

➤ Eddie Smith – Executive Manager, Keystone



## TISHMAN
### Owned Properties

Sheraton Chicago Hotel & Tower
(1,209 rooms)

Hilton in the Walt Disney World Resort
(814 rooms)

Four Points Hotel Los Angeles
International Airport (574 rooms)

Walt Disney World Dolphin (1,509 rooms)

E-Walk on the New 42nd Street
(195,000 sf)

Westin Diplomat Beach Resort
& Villas (680 rooms)

Westin New York at Times Square
(863 rooms)

Walt Disney World Swan (758 rooms)





# Keystone Group

- Serving DC Metropolitan Area since 1989

- Full Service General Contractor Providing Preconstruction and Construction Phase Services

- Specialize in Renovations and Interior Modernizations

# Select Projects





3500 Connecticut Avenue
Washington, DC



1747 Connecticut Avenue
Washington, DC



Land Information Warfare Activity
Ft. Belvoir, Virginia



Inter-American Development Bank
Washington, DC



Children's Inn Expansion Campus,
National Institute of Health
Bethesda, Maryland

# Select Regional Experience

## DC Convention Center Hotel

- Developer/ Builder for 1,500-Room Hotel

- Public/Private Partnership with Marriott, Gould Properties, & DC Government

- Largest Hotel in the District





Howard University
Bethune Hall

- $30 Million, 316-Bed New Dormitory Facility—Demolition & Construction

- Extensive Preconstruction, CM/GMP Services

- Challenge: Restrictive Site Logistics in Urban Campus Setting



# Bank One Data Centers

- CM for 240,000 SF Twin $130M Data Centers

- Preconstruction and CM/GMP Services

- Fast-Track Project

- Precast Façade, Roofing System & MEP Piping in Progress







# Preconstruction Phase Services

- Building Systems Analysis
- Budgeting
- Value Engineering
- Scheduling
- Constructibility
- Site Logistics
- Pre-Purchasing/Early Release Packages



# Why the Tishman-Keystone Team?

✓ Valued Client Relationship

✓ Tishman:
- ◆ Culture
- ◆ Reputation
- ◆ Resources
- ◆ Experience



# TISHMAN

www.tishman.com

5335 Wisconsin Avenue, NW, Suite 750
Washington, DC 20015
T (202) 966-3444
F (202) 966-3460

# American Pharmacists Association
## Headquarters Building Expansion




**APhA**


The JBG Companies


TISHMAN


THE KEYSTONE GROUP

# Schematic Estimate Package


EXHIBIT
B

# American Pharmacists Association Headquarters Building Expansion Schematic Estimate Package

# Table of Contents

�khgg 4/29/04 – Schematic Submission

- ◆ Schematic Estimate
- ◆ Alternates
- ◆ Assumptions & Clarifications
- ◆ List of Drawings & Specs

�khgg 5/20/04 – Schematic Submission w/Pope Building

- ◆ Revised Schematic Estimate
- ◆ Alternates
- ◆ Assumptions & Clarifications (Email)
- ◆ Revised List of Drawings & Specs

�khgg Conceptual Schedule – 4/15/04

| Description | Orig Dur | Early Start | Early Finish |
|---|---|---|---|
| **Design / Preconstruction** | | | |
| Schematic Design Documents | 0 | 15APR04 | |
| Schematic Design Budgeting | 2w | 15APR04 | 28APR04 |
| Schematic Budget VE/Reconciliation/Approval | 1w | 29APR04 | 05MAY04 |
| Design Development Documents | 15w3d | 29APR04 | 16AUG04 |
| Design Development Budgeting | 3w | 17AUG04 | 06SEP04 |
| Construction Documents | 32w3d | 17AUG04 | 31MAR05 |
| D D Budget VE/Reconciliation/Approval | 2w | 07SEP04 | 20SEP04 |
| Bid & Award Envmt. Assessment & Monitoring | 3w | 04OCT04 * | 22OCT04 |
| Prepare Envmt. Assessment & Abatement Scope | 3w | 25OCT04 | 12NOV04 |
| Bid & Award Abatement Contract | 3w | 15NOV04 | 03DEC04 |
| Issue Demo/Raze Docs incl. E&S Dwg's | 0 | 15NOV04 * | |
| Bid & Award Demolition, E&S and Site Fencing | 3w | 15NOV04 | 03DEC04 |
| HPRB & CFA Approval of Raze Documents | 4w | 15NOV04 | 10DEC04 |
| Obtain Interior Demo Permit for Pope & Annex | 2w | 06DEC04 | 17DEC04 |
| Obtain Abatement Permit | 2w | 06DEC04 | 17DEC04 |
| Obtain Raze Permit | 12w | 13DEC04 | 04MAR05 |
| Issue Permit Documents | 0 | 03JAN05 * | |
| Permit Documents Budget Check/Final VE | 4w | 03JAN05 | 28JAN05 |
| APhA Move to Swing Space | 0 | 03JAN05 * | |
| Obtain Building/Public Space Permits | 30w | 03JAN05 | 01AUG05 |
| Bid & Award Sheeting/Shoring & Excavation | 3w | 31JAN05 | 18FEB05 |
| Sheeting Shoring Design | 2w | 21FEB05 | 04MAR05 |
| Obtain Sheeting Shoring/Excavation Permit | 6w | 07MAR05 | 15APR05 |
| Bid & Scope Balance of Trades | 4w | 01APR05 | 29APR05 |
| Set GMP | 0 | 29APR05 | |
| Owner Approve GMP | 1w | 29APR05 | 05MAY05 |
| Award Balance of Trades | 8w | 06MAY05 | 30JUN05 |
| **BB Construction** | | | |
| Abate Annex and Pope Buildings | 5w | 03JAN05 | 04FEB05 |
| Interior Demolition/Cut & Cap Utilities | 4w | 07FEB05 | 04MAR05 |
| Mobilize to Site - Install Fencing/E&S Controls | 2w | 07MAR05 | 18MAR05 |
| Raze Annex Building/Clear Site | 6w | 21MAR05 | 29APR05 |
| Sheeting & Shoring/Rock Anchors | 12w | 02MAY05 | 25JUL05 |




**Tishman/Keystone**
**APhA New Headquarters Building**
**Schematic Design Schedule**
**April 2004**

| Start date | 15APR04 |
|---|---|
| Finish date | 01FEB07 |
| Data date | 15APR04 |
| Run date | 25MAY04 |
| Page number | 1A |

© Primavera Systems, Inc.

Early bar
Progress bar
Critical bar
Summary bar
◆ Start milestone point
◆ Finish milestone poin

| Description | Orig Dur | Early Start | Early Finish | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|---|
| Excavation | 18w | 02MAY05 | 05SEP05 | | Excavatio | | |
| Foundations | 12w | 02AUG05 | 24OCT05 | | Foundations | | |
| Superstructure | 16w | 25OCT05 | 13FEB06 | | Superstructure | | |
| Building Enclosure | 22w | 17JAN06 | 19JUN06 | | | Building Enclosure | |
| Building MEP Sytems | 38w | 11APR06 | 04JAN07 | | | Building MEP Sytems | |
| Interior Finishes | 29w | 20JUN06 | 11JAN07 | | | Interior Finishes | |
| Sitework | 12w | 20JUN06 | 12SEP06 | | | Sitework | |
| Final Inspections | 3w | 12JAN07 | 01FEB07 | | | | Final Inspections |
| Certificate of Occupancy | 0 | | 01FEB07 | | | | Certificate of Occupancy |

**Tishman/Keystone**
**APhA New Headquarters Building**
**Schematic Design Schedule**
**April 2004**

| | |
|---|---|
| Start date | 15APR04 |
| Finish date | 01FEB07 |
| Data date | 15APR04 |
| Run date | 25MAY04 |
| Page number | 2A |
| © Primavera Systems, Inc. | |

TISHMAN

| | |
|---|---|
| Early bar | |
| Progress bar | |
| Critical bar | |
| Summary bar | |
| ♦ Start milestone point | |
| ♦ Finish milestone poin | |



## Proposal to Provide General Contracting Services



Submitted to:
## The American Pharmacists Association
## December 9, 2004

Tishman Construction Corporation of DC ▪ 5335 Wisconsin Avenue, NW Suite 750 ▪ Washington, DC 20015
www.tishman.com



EXHIBIT

C



Project Organization Chart

American Pharmacists Association
Headquarters Building Project



## PROJECT ORGANIZATION NARRATIVE

We are pleased to present our proposed staff for the construction of American Pharmacists Association New Headquarters Building and renovation of the existing Pope Building. Tishman Construction Corporation of DC proposes to enter into the contract for General Contracting directly with American Pharmacists Association with the JBG Companies as their Development Manager and take full contractual responsibility for all contract deliverables as a stand alone entity.

We have assembled a base building team including Jeffrey Dodd, Robert Smith and Jeffrey Helms who are perfectly suited to execute the construction of this prestigious project on the Nations Capitol Mall. Mr. Dodd is intimately familiar with the project through his role as the lead for Tishman in the preconstruction services already provided on this project. Mr. Smith & Mr. Helms have both worked with each other as well as with Mr. Dodd on multiple successful Tishman projects.

In order to provide the best service to APhA and JBG, we have assembled a team which includes some key individuals from the Keystone Group who is currently working in conjunction with Tishman on three other projects.. These individuals, Carl Beyma, Interiors Project Manager and Trevor Harmon Interiors Superintendent, bring a working knowledge of the existing Pope Building from performing previous renovations for APhA on the project. In Addition, The Keystone Group brings a separate knowledge base and relationships with Interior Subcontractors focusing on High End Interiors and Historic renovation/restoration work on the scale included on this project. These relationships will be utilized to enhance the quality and cost efficiency in dealing with this portion of the work. Both of these individuals will be working directly as part of the Tishman team and reporting to the senior Tishman management on the project site. As stated previously, this is a relationship of convenience for Tishman and full responsibility for all contract deliverables to APhA will be with Tishman.

We have included our organization chart and the resumes of the key individuals referenced herein in this section.



Mr. Daniel P. McKim
JBG Development Group, LLC
c/o
The JBG Companies
4445 Willard Avenue Suite 400
Chevy Chase, MD 20815

December 9, 2004

Re.:   Proposal to Provide General Contracting Services for the American Pharmacists
       Association Headquarters.

Dear Mr. McKim:

Tishman Construction Corporation of DC are pleased to submit the attached proposal for
General Contracting services for the expansion of American Pharmacists Association (APhA)
Headquarters Building on Constitution Avenue in Washington, DC.  We believe our team has the
requisite qualifications and vast experience to not only meet, but to exceed your expectations.

We have proposed Jeffrey Dodd as the Project Executive to lead these efforts.  Having led the
preconstruction efforts over the past year, Mr. Dodd is intimately familiar with the details of the
project, has first hand knowledge of APhA, JBG and HCA's concerns as they relate to budget,
schedule and quality.   Therefore, he is uniquely positioned to continue this role through
completion of the preconstruction and construction phases.    I hope that, during our
preconstruction services, we have demonstrated our team's ability to respond professionally and
timely to your needs.

We want to thank you again for the opportunity to present our qualifications and convey to you
our enthusiasm and commitment to provide our services to The JBG Companies and the
American Pharmacists Association for this project.  We look forward to working with you to
ensure the success of this project.

In closing, we look forward to presenting our complete team to you on Monday, December 13,
2004.   If you have any questions, I can be reached at (202) 966-3444 or by e-mail at
scarpace@ma.tishman.com.

Sincerely,

TISHMAN CONSTRUCTION CORPORATION of DC

James M. Scarpace
Senior Vice President

**Tishman Construction Corporation of D.C.** Chevy Chase Pavilion, 5335 Wisconsin Avenue, N.W., Suite 750, Washington, D.C. 20015
(202) 966-3444   Fax (202) 966-3460



# Table of Contents

**1  Bid Form - Document 00300**

    A. Bid Form
    B. Appendix A - The Headquarters Office Building
    C. Appendix B - The Pope Building Renovation
    D. Appendix C - General Conditions Breakdown

**2  Project Organization**

    A. Organizational Chart
    B. Staff Resumes

**3  Project Schedule**

**4  Site Logistics**

    A. Site Logistics Narrative
    B. Site Logistics Plan

**5  Budget**

    A. Budget Summary Pages
    B. Detailed Construction Budget

**6  Contractor's Bid Clarifications**



# BID FORM

### Document 00300

## AMERICAN PHARMACISTS ASSOCIATION
### HEADQUARTERS

**2215 Constitution Avenue, NW**
**WASHINGTON, DC**

**Submitted by:  Tishman Construction Corporation of DC**

**Date: December 9, 2004**

**TO:**
**Daniel P. McKim**
**JBG Development Group, LLC**
**c/o**
**The JBG Companies**
**4445 Willard Avenue Suite 400**
**Chevy Chase, MD 20815**

We the undersigned, having carefully examined the Design Development Documents prepared by Harman-Cox Architects, the proposed Construction Contract, and other proposed Contract Documents made available to us, including Addenda A, B, C & D issued prior to the date of receipt of Proposals, do hereby submit the following:

**Proposal for General Conditions Costs**
Estimated General Conditions Costs are included in APPENDIX C of this BID FORM. Refer to ¶ 5.3 and Articles 7 & 8 of the AIA A1111 Agreement forming part of the proposed Construction Contract, which define General Conditions Costs and Costs of the Work.

Bidders are asked to expand on the General Conditions Costs items listed in APPENDIX C as appropriate to cover all categories of expenditure for General Conditions Costs.

Our cost for the Project General Costs shall be the lesser of **7.4%** of the Subcontract Costs, or **$2,168,980.**

**Proposal for Fee**
This includes the firm's overhead and profit.

Our fee for the Project shall be the lesser of **2.5%** of the Cost of the Work, or **$789,212.**

**Estimated Cost – Construction Trades – The Headquarters Office Building**

We estimate that the total Cost of the Work described in the Design Development Documents will be:

**Twenty Eight Million Five Hundred Sixty Nine Thousand Four Hundred Forty Eight Dollars $28,569,448.00**

**Estimated Cost – Construction Trades – The Pope Building**

We estimate that the total Cost of the Work described in the Design Development Documents will be:

One Million Five Hundred Seven Thousand Three Hundred Thirty Three Dollars $1,507,333.00

**Estimated Time for Completion of the Work [Attach Schedule]**

We estimate that the entire Work will be completed within **Five Hundred Seventy Three [573]** consecutive calendar days from the issuance of a notice to proceed. A proposed Project Schedule is attached to this Bid Form.

**Proposed Project Team**

The resumes of the persons proposed as team members for this project must be attached to this Bid Form.

**Change Order Mark-ups**

Change Order mark-ups are identified in **Subparagraph 9.1.4** in the **General Conditions of the Construction Contract.**

**Bidders' Attention is Called to the Following**

- Article 9 of the General Conditions of the Construction Contract [Exhibit N] describes modification, change order and claims procedures and requirements.
- Lender requirements have not been determined at this time; however, lender terms and requirements will be included and required by the Construction Contract and will be added to the appropriate text and Exhibits to the Construction Contract.
- APhA will occupy the Headquarters Building will be leased to others.
- Paragraph 2.1 SITE CONDITIONS of the AIA A111 Agreement forming part of the proposed Construction Contract defines the Bidder's obligations concerning site conditions.

- Documents defining the scope of asbestos abatement in the Annex and the Pope Building have not been completed. Therefore, an Allowance of $300,000 is included in this Bid Form for this portion of the Work.

## Comments to the Construction Documents

Comments, if any, to the Construction Contract included in the bid documents must be attached to this Bid Form. It shall not be sufficient for the bidder to indicate that tits price is subject to the negotiation of a mutually-acceptable contract. In the event that the bidder requires changes in a provision set forth in the construction contract included in the bid documents, then the bidder shall indicate the specific provision and state the specific language that the bidder desires to substitute.

## SIGNATURE OF BIDDER

If submitted by a corporation:

**Bidder:** Tishman Construction Corporation of DC
                         [Firm Name]

**By:**      James M. Scarpace

**Title:**    Senior Vice President

**Business Address:**    5335 Wisconsin Avenue, NW Suite 750, Washington, DC 20015

**State of Incorporation:**  District of Columbia

**Name & Address of Officers:**    John T. Livingston
                                     President

                                     666 5th Avenue, New York, NY, 10103
                                     Address

                                     Kathy Kotoun
                                     Secretary

                                     666 5th Avenue, New York, NY, 10103
                                     Address

                                     Larry Schwarzwalder
                                     Treasurer

                                     666 5th Avenue, New York, NY, 10103
                                     Address

**Date:**      December 9, 2004

**TISHMAN**

| NAME | Carl J. Beyma |
|---|---|
| TITLE/YEARS OF EXPERIENCE | Project Manager<br>22 years Industry<br>18 years with Keystone |
| POSITION FOR PROPOSED CONTRACT | Interiors Project Manager |

**EDUCATION**

Bachelor of Science, Architecture, University of Maryland, 1982

**DESCRIPTION OF ROLE FOR THE PROPOSED CONTRACT**

Mr. Beyma will be responsible for assisting Mr. Smith on all aspects of project management with his main focus being the scope involved in the renovation and restoration of the Pope Building, the Main lobby interior finishes and the base building core finishes throughout the building.

**RELEVANT EXPERIENCE SUMMARY**

Mr. Beyma has been responsible for all aspects of project management to ensure the timely completion of each phase of construction; from the bid phase to final punch list and project close out on the projects he has been involved with.

**MR. BEYMA'S RELEVANT EXPERIENCE INCLUDES:**

**American Pharmacists Association, Washington, DC**
Mr. Beyma served as the Project Manager on the interior renovations in the Pope Building of the American Pharmacists Association. Responsible for the management of the project, Mr. Beyma oversaw the demolition and build-out of new offices, lighting fixtures and mechanical system.

**Children's Inn Expansion - Bethesda Campus**
**National Institute of Health, Bethesda, Maryland**
Mr. Beyma is serving as the Project Manager on this expansion for the NIH which will provide twenty-two additional guest rooms, kitchen, dining and laundry facilities, lounge and meeting rooms and additional staff offices and public space amenities. The 34,000 square foot two-story addition has combination steel and wood frame structure. The exterior is wrapped in stone and cedar siding with a cedar shakes roof and a dramatic sloped wall stair tower. To ensure comfort and optimum control, the addition has its own water cooled heat pump system, including gas fired boilers and vertical heat pumps at each guest room. All public areas are served by zoned horizontal heat pumps. The new electric service includes a new 500 KW generator to allow for 100% emergency power back-up. Mr. Beyma has been a part of the team from project inception. Overall project costs remain well within the targeted values.

**TISHMAN**

**PROPOSAL FOR GENERAL CONTRACTING SERVICES**

**AMERICAN PHARMACISTS ASSOCIATION**

**Evangelical Lutheran Church, Frederick, MD**:
Mr. Beyma was the Project Manager for the renovations to the Evangelical Lutheran Church in the historic district of Frederick, Maryland. The electric scope of work included a new electric service; complete rewiring of all electric devices, refurbishment of decorative chandeliers and installation of new lighting and lighting controls. The mechanical scope included re-piping of the chilled water and hot water piping, new boiler and new HVAC equipment. A key to the success of the project was to coordinate the routing of piping and electrical feeders to minimize disturbances to the existing architectural elements. Working closely with the design team and its subcontractors Mr. Beyma was able to successfully complete the work with a minimum of disturbance to these elements. The entire project was completed without any interruption to the regular church service schedule. Precise scheduling insured that the HVA/C system satisfied the needs of the facility throughout the winter heating season. Due in large part to the value engineering efforts of Mr. Beyma, the project was delivered below the budgeted price.

**TEAM EXPERIENCE:** Mr. Beyma has worked extensively with Mr. Harmon on multiple projects and in particular worked with Mr. Harmon on previous interior renovations to the existing Pope Building for American Pharmacists Association.

**REFERENCES:**

| | | |
|---|---|---|
| Ms. Gil Brown<br>Childrens Inn at N.I.H.<br>Tel: (301) 496-5672 | Ms. Anne T. Dubas<br>American Pharmaceutical Assoc.<br>Tel: (202) 429-7529 | Mr. Charles Dougherty<br>Realty Mgmt Co.<br>Tel: (301) 657-8386 |



**PROPOSAL FOR GENERAL CONTRACTING SERVICES**

AMERICAN PHARMACISTS ASSOCIATION

| NAME | Trevor Harmon |
|---|---|
| **TITLE/YEARS OF EXPERIENCE** | Superintendent<br>18 years Industry<br>9 years with Keystone |
| **POSITION FOR PROPOSED CONTRACT** | Interiors Superintendent |

**DESCRIPTION OF ROLE FOR THE PROPOSED CONTRACT**

Mr. Harmon will be the Interiors Superintendent assisting Mr. Helms with all aspects of field coordination, safety, quality control and schedule adherence with his main focus bein the scope of work inclusive of the Pope Building Renovation/Restoration, the Interior Finishes in the Main Lobby and the Interior finishes throughout the cores of the new Headquarters Building.

**RELEVANT EXPERIENCE SUMMARY**

Mr. Harmon has been a Superintendent with Keystone for 9 years focusing on High –End Interiors and Historic Renovation projects. He provides an attention to detail and high quality finishes as well as being responsible for maintenance of scheduling and site safety to all of his projects.

**MR. HARMON'S RELEVANT EXPERIENCE INCLUDES:**

**American Pharmacists Association, Washington, DC**

Mr. Harmon served as the Project Superintendent on the interior renovations in the Pope Building of the American Pharmacists Association, which consisted of the demolition and build-out of new offices, lighting fixtures and mechanical system.

**3500 Connecticut Avenue, Washington, DC:**

Mr. Harmon served as Superintendent on this project for Starwood Urban Retail. The project consisted of the renovation of ten contiguous row houses in Northwest Washington, D.C. The scope of work included the complete demolition of all interior finishes, modification of all load bearing walls and floors and the installation of new stairwells and restrooms. The entire front elevation was demolished and extended approximately 10 feet toward Connecticut Avenue, with new foundation walls and new structurally glazed storefronts. Complete new roofing, electric, plumbing and HVAC systems were installed. The successful completion of this project required close coordination and scheduling with Technical Property Services Inc. (Construction Manager), the local utility companies, WMATA and several existing tenants who were relocated within the project during the construction operations. Based upon M. Harmon's performance on this project Starwood Urban has awarded five additional projects to The Keystone Group.

**Alexandria Hospital Professional Center, Alexandria, VA**

Mr. Harmon served as Superintendent on the renovation of this twelve-story building. This demanding project was completed on schedule with a minimum of interruption to the building occupants. As a part of the work, Mr. Harmon oversaw the installation of a new switchgear in an expanded main electric room and a new electrical bus duct riser. New electric closets were created at each floor with new distribution panels. In phases tenant electric loads were transferred

from the existing electric closets to the new service. A new fire alarm riser and fire control room were installed. To allow for full fire alarm protection during construction the new system was run in parallel with the existing until the final control panel wiring was completed. The elevator machine room equipment was reconfigured and new elevator doors were cut into existing elevator lobbies with a minimum of disruption to existing finishes. A new elevator was then installed to serve 14 floors. The work required modifications to the existing main lobby terrazzo floors, marble walls and drywall ceiling. Floor and wall finishes on the typical floor elevator lobbies were included within the scope of work.

### Inter-American Development Bank, Washington, DC

Mr. Harmon served as Superintendent for this project which consisted of the installation of a 30' grand staircase connecting the three floors of the space. This internal cantilevered staircase was installed in an occupied building which posed logistical and installation challenges. All components were craned into the 10th floor of the building and erected with the Bank personnel occupying a portion of the floor. Welding and smoke evacuation were carefully coordinated to ensure no disruption with the Bank operations. The "cantilever" design gives the illusion that the stair is "free floating". The drywall work at the grand stair "feature wall" rises a distance of approximately thirty feet (30') - from the 10th to 12th floor. Within the feature wall, custom lighting fixtures and acrylic panels were installed for backlighting. The work required careful and precise coordination with many other trades. The drywall finishing of the openings required skilled craftsmanship working on scaffolding adjacent to the grand staircase that was being installed at the same time. The millwork credenza located in the 12th floor reception area contains a combination of finishes including wood, glass and stainless steel that required careful coordination among several trades. The 18 foot long credenza required special internal structural supports to carry the logo and filmed glass in addition to the support of the long span. The wood flitches were precisely matched to coordinate with the credenza and the wood paneling beyond. The Project won the Washington Building Congress Craftsmanship Award for best Miscellaneous Metals Fabrication in 2004.

**TEAM EXPERIENCE:** Mr. Harmon has worked extensively with Mr. Beyma on multiple projects and in particular worked with Mr. Harmon on previous interior renovations to the existing Pope Building for American Pharmacists Association.

**REFERENCES:**

| | | |
|---|---|---|
| Charles Dougherty | Susan Burke | James "Bucky" Wyne |
| Realty Management Co. | Starwood Urban Retail | IADB |
| Tel: (301) 657-8386 | Tel: (202) 478-4627 | Tel: (202) 623-3023 |

*M 07-1051 RBW*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

The Keystone Group, LLC

88888

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Montgomery, MD
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

G. David Fensterheim
Fensterheim & Bean, PC
1250 Connecticut Ave., NW, Suite 700
Washington, D.C. 20036
202-419-1510

## DEFENDANTS

Tishman Construction Corporation of D.C.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Washington, D.C.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATT

Case: 1:07-cv-01051
Assigned To : Walton, Reggie B.
Assign. Date : 6/14/2007
Description: Contract

*JURY ACTION*

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

②

*OFT. SAVD. TWICE*

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ◉ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Section No. 1332, Action for breach of contract, fraud, breach of fiduciary duty, unjust enrichment, and declaration of constructive trust.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒  NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE _6-13-07_    SIGNATURE OF ATTORNEY OF RECORD _David Smith_

14

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.